UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Roger Egbert, on behalf of himself and all others similarly situated,

Plaintiff,

v.

Crown Equipment Corporation,

Defendant.

Case No. 3:24-cv-1672

MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Roger Egbert originally filed suit on behalf of himself and all others similarly situated in the Auglaize County, Ohio Court of Common Pleas against Defendant Crown Equipment Corporation, bringing claims associated with an alleged data breach. (Doc. No. 1-1). Crown timely removed, (Doc. No. 1), and then moved to dismiss Egbert's claims for failure to state a claim under Rule 12(b)(6). (Doc. No. 7). Egbert opposed the motion, (Doc. No. 11), and Crown filed a reply. (Doc. No. 12). Egbert filed two notices of supplemental authority in opposition to Crown's motion to dismiss, (Doc. Nos. 13 and 15), and Crown filed responses. (Doc. Nos. 14 and 16). For the reasons stated below, I grant Crown's motion to dismiss.

## II. BACKGROUND

Crown is an Ohio corporation that manufactures and sells forklifts, material handling devices, and auxiliary tools. (Doc. No. 1-1 at 6-7). In 2024, Crown was the victim of a cyberattack wherein a third-party gained limited unauthorized access to its IT systems. (*Id.* at 8). Crown

subsequently issued a Notice of Data Breach to its employees, including Egbert.[1] (*Id.*). The notice stated, in relevant part:

> As you may know Crown Equipment Corporation ("Crown," "our," or "we") was recently the victim of a cyberattack and an unauthorized third party obtained limited access to our information technology ("IT") environment. The purpose of this letter is to inform you that the privacy of certain personal data related to you and your family members, could have potentially been compromised during the incident. However, as we have previously communicated with you, we are highly confident **that any data impacted by this incident (including personal data) will not, and cannot, be misused in anyway.**

(*Id.*) (emphasis in original). While Crown's primary human-resources database had not been accessed, portions of its IT environment containing employee-benefit and administrative records "were compromised." (*Id.* at 9). The records included social security numbers, driver's license numbers, financial account information, health information, and other personally identifiable information ("PII"). (*Id.*). The notice stated that Crown had retained the compromised records to administer employee benefits. (*Id.*).

In response to the breach, Crown asserted it immediately implemented security measures to contain the incident, temporarily took the affected system offline, retained a cybersecurity incident-response team, notified federal law-enforcement authorities, and worked with cybersecurity partners to investigate the breach. (*Id.* at 9-10). According to Crown, these efforts allowed it to quicky contain the cyberattack and return to normal operations. (*Id.* at 9). Crown further asserted that due to its efforts, it remained confident that any affected personal information could not be used for malicious purposes. (*Id.* at 8); (Doc. No. 7-1 at 2-3). Despite this high confidence, Crown offered the affected employees a complimentary year of credit monitoring. (Doc. No. 7-1 at 3).

[1] While the complaint alleges Crown issued the Notice of Data Breach on February 12, 2024, the notice itself states that Crown did not discover the breach until June 9, 2024. (*See* Doc. No. 1 at 8-9). Crown had begun notifying employees of the breach by August 8, 2024. (*See id.* at 11; Doc. No. 7-1 at 2).

Egbert alleges that on August 8, 2024, he received notice that his personal information – including his name, social security number, driver's license number, financial account information, and medical information – may have been compromised in the data breach.[2] (Doc. No. 1-1 at 11-12).

Egbert alleges that Crown failed to properly secure and safeguard his and his family members' PII and protected health information. (*Id.* at 3). Based on those allegations, he brings claims under theories of negligence (Count I), breach of implied contract (Count II), unjust enrichment (Count III), and declaratory and injunctive relief (Count IV). (*Id.* at 35-50).

## III. Standard

A defendant may seek to dismiss a plaintiff's complaint on the ground the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual

---

[2] Crown attached a copy of the August 8, 2024, Notice of Data Breach letter – which contains identical language to the alleged February 12, 2024, letter – to its motion to dismiss. (Doc. No. 7-1). Together with the complaint, I may consider "any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). While Egbert alleges that the August 8th notice told him that his PII *was* compromised in the data breach, (Doc. No. 1-1 at 11-12), the text of the notice reads "the privacy of certain personal data related to you and your family members, *could have potentially* been compromised during the incident." (Doc. No. 7-1 at 2) (emphasis added). When "a written instrument contradicts allegations in the complaint . . . the exhibit trumps the allegations." *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (further citations and internal quotation marks omitted).

inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. Analysis

Data-breach litigation remains an evolving area of Ohio law, with little binding precedent to guide my analysis. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) (acknowledging that "[t]he realm of data breach litigation is complex and largely undeveloped" and presents "novel questions of law"). Courts and circuits are often split, reaching different conclusions on many legal issues presented in these cases. Because these cases often turn on the facts of the case, I confine my analysis to the particular allegations and claims asserted in the complaint and Ohio law as it currently stands.

### A. Negligence

Crown argues Egbert's negligence claim fails because he has not plausibly alleged legally cognizable damages. (Doc. No. 7 at 12). Crown contends that Egbert has alleged only hypothetical, speculative, or uncertain harm rather than *actual* damages as required under Ohio law. (*Id.* at 12-13) (citing *Wolf v. Lakewood Hosp.*, 598 N.E.2d 160, 164 (Ohio Ct. App. 1991) ("explaining 'the necessity of actual damages' is a required element of 'actions in tort'"), and *Singleton v. City of Hamilton*, 515 N.E.2d 8, 15 (Ohio Ct. App. 1986) ("explaining 'a cause of action for negligence' requires 'actual damages'")). Crown further argues that although Egbert alleges he suffered "actual identity theft," the complaint does not identify any resulting injury, including fraud, financial loss, or other specific out-of-pocket damages. (Doc. No. 7 at 13-14). *See also* (Doc. No. 1-1 at 43).

Egbert responds that negligence requires proof of injury – not "actual damages." (Doc. No. 11 at 12). Alternatively, he argues that the complaint plausibly alleges actual damages – which is synonymous with compensatory damages – sufficient to state a negligence claim. (*Id.* at 13-14).

Under Ohio law, a negligence claim requires proof of four elements: "duty, breach of duty, causation, and damages." *Anderson v. St. Francis-St. George Hosp. Inc.*, 671 N.E.2d 225, 227 (Ohio 1996). A negligence claim cannot succeed absent proof of damages. *See River v. Giant Eagle, Inc.*, 138 N.E.3d 1121, 1125 (Ohio 2019). An "injury and the resulting damage must be shown with certainty and not be left to conjecture and speculation." *Pietz v. Toledo Tr. Co.*, 577 N.E.2d 1118, 1122 (Ohio Ct. App. 1989). Thus, a plaintiff's failure to plausibly allege legally cognizable damages is fatal to a negligence claim. *See id.* ("Because their claims for damages are speculative, appellants are precluded from any recovery on their causes of action for negligence and intentional misconduct.").

As Prosser and Keaton explain:

> Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred. The threat of future harm, not yet realized, is not enough.

Prosser & Keeton, The Law of Torts 165 (5th ed 1984).

Egbert first asserts that because he has plausibly alleged an injury sufficient to establish Article III standing, the injury element of his negligence claim is inferred. (Doc. 11 at 14) (citing *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 290 (2d Cir. 2023)). Egbert argues that the complaint plausibly alleges three categories of damages: (1) risk-based damages; (2) privacy-based damages; and (3) the diminished value of his PII. (Doc. No. 11 at 14-19).

Several district courts have conflated whether a plaintiff has alleged sufficient injury to establish Article III standing with whether they have stated cognizable damages to support their negligence claim. *See, e.g.*, *Allen v. Wenco Mgmt., LLC*, 696 F. Supp. 3d 432, 437-38 (N.D. Ohio 2023) (drawing on principles of standing to find risk of identity theft and privacy violation satisfied the "damages" element of negligence); *see also Munger v. Matco Tools Corp.*, No. 5:23-cv-337, 2026 WL 1223399, at *6 (N.D. Ohio May 5, 2026) (adopting the reasoning in *Allen* to conclude that at the

meeting Article III's injury-in-fact requirement satisfies the damages element of negligence); *In re CBIZ Data Breach Litigation*, No. 1:24 CV 1722, 2025 WL 1557033, at *7-8 (N.D. Ohio June, 2, 2025) (citing *Allen* and other opinions addressing standing to determine the validity of damages).

I respectfully decline to adopt that approach. Whether a plaintiff has established standing under Article III and whether the plaintiff sufficiently plead a cause of action are distinct legal inquiries. *See Bond v. United States*, 564 U.S. 211, 218-19 (2011). "The distinct concepts can be difficult to keep separate." *Id.* at 218. Standing is a jurisdictional requirement. It asks whether the plaintiff has alleged an injury-in-fact that is fairly traceable to the defendant's conduct and likely to be redressed by a favorable judicial decision. *See Bangura v. Hansen*, 434 F.3d 487, 500 (6th Cir. 2006); *Cool v. Frenchko*, 200 N.E.3d 562, 571 (Ohio Ct. App. 2022). By contrast, "the question whether a plaintiff states a claim for relief 'goes to the merits' in the typical case, not the justiciability of a dispute." *Bond*, 564 U.S. at 219.

Accordingly, satisfying Article III's injury-in-fact requirement may permit a plaintiff to invoke the jurisdiction of the federal courts, but it does not establish that the plaintiff has successfully plead the elements of a negligence cause of action. *Cf. Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 691 (S.D. Ohio 2006) ("This Court's exercise of subject matter jurisdiction over Plaintiff's claims does not automatically imply that Plaintiff has stated a claim upon which the Court can grant relief."). In other words, while establishing Article III standing may be "enough to open the courthouse door," it is not enough to sustain a cause of action that requires a showing of actual damages. *See Doe v. Chao*, 540 U.S. 614, 624-25 (2004) (explaining that an individual may suffer Article III injury and yet fail to plead a proper cause of action).

The converse, however, is instructive. Article III imposes a lower threshold than the proof required to prevail on a negligence claim. Thus, if a plaintiff fails to allege an injury sufficient to establish standing, the plaintiff necessary fails to allege the legally cognizable damages required to

sustain a negligence claim. *See Key*, 454 F. Supp. 2d at 691. ("[B]y dismissing all of the Plaintiff's claims for lack of standing, by implication the Court has found that the Plaintiff has not alleged cognizable damages sufficient to state a contract, negligence, conversion, or fiduciary duty claim.").

In sum, standing and the merits of a claim are distinct inquiries. While establishing an injury-in-fact for Article III standing does not automatically prove damages for a negligence claim, a plaintiff who fails to meet this lower standing threshold inherently fails to establish cognizable damages. Thus, Egbert "argues inaccurately when [he] attempts to conflate jurisdictional standards with standards of review under 12(b)(6)." *See id.*

With those principles in mind, I turn to Egbert's alleged damages.

**1. Risk-based damages**

Egbert does not allege that his PII has actually been used to commit fraud, gain access to his personal financial accounts, obtain insurance, open lines of credit, or any other tangible injury. Although it is undisputed that a third party gained access to parts of Crown's IT systems, it remains unclear whether Egbert's personal information was actually compromised.

Throughout the pleadings and briefing, Egbert vacillates between whether his PII was *actually* stolen, or whether his information was *potentially* stolen. *Compare* (Doc. No. 1-1 at 11) ("Plaintiff Egbert received a Notice of Data Breach from Defendant on August 8, 2024, . . . confirming that his [PII] . . . *was compromised* in the Data Breach.") (emphasis added), *and* (Doc. No. 11 at 17) ("Plaintiff plausibly alleged a substantial risk of harm because his Private Information *was stolen* in the Data Breach.") (emphasis added), *with* (*id.* at 14) ("Plaintiff is one of the employees *likely* impacted [by the data breach].") (emphasis added).

Moreover, Egbert identifies only one source from which he received information about the potential unauthorized access of his PII – Crown's August 8, 2024 data breach notification. (*See* Doc. No. 1-1 at 11). And that document contradicts Egbert's allegation that his PII "was"

compromised. (*Id.*). Instead, the August 8, 2024 notice states "the privacy of certain personal data related to you and your family members, *could have potentially* been compromised during the incident" and directed employees to contact a helpdesk if they "would like to know what – if any – personal data related to you or your family members was impacted by this incident." (Doc. No. 7-1 at 2, 3) (emphasis added); (*see also* Doc. No. 1-1 at 8, 9). As I stated above, "[w]hen a written instrument contradicts allegations in the complaint . . . the exhibit trumps the allegations." *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (further citations and internal quotation marks omitted) (alteration by *Cates*).

All the same, Ebert argues that he has suffered a cognizable injury because he faces a substantial risk of future identity theft and fraud. (Doc. No. 1-1 at 13); (Doc. No. 11 at 14-15). He contends that – despite Crown's assurances that the compromised information cannot be misused – it is impossible to know whether the cybercriminals copied or transferred the information before law enforcement intervened. (Doc. No. 11 at 16). Thus, Egbert asserts that Crown's mitigation efforts taken after the breach are of no consequence because he still faces a "substantial risk" of future harm. (*Id.* at 17).

Crown argues that an increased risk of future harm, standing alone, cannot support a negligence claim. (Doc. No. 12 at 9). Alternatively, Crown asserts that even if such a risk could constitute cognizable damages, Egbert has failed to plausibly allege that any such risk exists here. (*Id.*).

The Ohio Court of Appeals has held that an increased risk of identity theft or fraud can constitute a cognizable injury sufficient to establish standing. *Short v. Ohio Dep't of Job and Family Servs.*, 271 N.E.3d 351, 375 (Ohio Ct. App. 2025). As laid forth above, establishing standing is not equivalent to establishing the damages element of a negligence claim. But even if I apply the principles of standing, Egbert has failed to plausibly allege he is at risk of imminent harm.

In the standing context, a plaintiff relying on a risk-based injury, "bear[s] the burden of pleading . . . concrete facts showing that the defendant's actual action has caused the substantial risk of [future] harm." *Clapper v. Amnesty Int'l USA*, 588 U.S 398, 411 n.5 (2013); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). The alleged injury cannot rest upon "speculation about the unfettered choices made by independent actors not before the court." *Clapper*, 588 U.S. at 414. (citation omitted and internal quotation marks omitted). Instead, the plaintiff must show the injury is "imminent" by establishing the harm is "*certainly impending*." *Id.* at 409 (emphasis in *Clapper*). "'[A]llegations of *possible* future injury' are not sufficient." *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in *Clapper*).

Recently, the Ohio Court of Appeals identified three non-exhaustive factors relative to determining whether an alleged risk of future identity theft is sufficiently imminent in the data-breach context: (1) "whether 'the data was compromised as the result of a targeted attack intended to get PII,'" (2) "whether some part of the compromised data 'has been misused – even if a plaintiff's own data has not'"; and (3) "whether the exposed PII was of a 'type more or less likely to subject plaintiffs to a perpetual risk of identity theft or fraud once it has been exposed.'" *Short,* 271 N.E.3d at 368 (quoting *Bohnak*, 79 F.4th at 288) (further citation and internal quotation marks omitted).

Applying those factors here, Egbert has not plausibly alleged that he faces an imminent risk of future harm. While the complaint plausibly alleges that cybercriminals targeted Crown in an effort to obtain PII, it does not plausibly allege Egbert's information was actually obtained. Nor does the complaint allege that Egbert – or any member of the proposed class – has experienced fraudulent activity, theft, or any other misuse of personal information attributable to the incident. *Compare Short*, 271 N.E.3d at 371 (finding imminent threat where cyberhackers targeted defendant, stole PII, used the PII to file $189,184.62 in fraudulent claims, and offered the plaintiff's PII for sale

on the dark web), *with Key*, 454 F. Supp. 2d at 690 (finding plaintiff's allegations "create only the possibility of harm at a future date" and not imminent harm where claims relied on being the "victim of wrongdoing at some unidentified point in the indefinite future"). *See also Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) (finding imminent risk where plaintiff plausibly alleged cybercriminal targeted her PII and information was "in the hands of ill-intentioned criminals.")

Moreover, under Ohio law, recovery for future damages is limited to losses that the plaintiff is "reasonably certain to incur." *See Berge v. Columbus Cmty. Cable Access,* 736 N.E.2d 517, 546 (Ohio Ct. App. 1999). Based on the conflicting allegations in the complaint and the contents of the notice letter, Egbert has failed to plausibly allege that he faces a substantial risk of future injury or is reasonably certain to incur future losses due to the unlawful conduct of cybercriminals. *See Doe v. Mission Essential Grp. LLC*, No. 2:23-cv-3365, 2024 WL 3877530, at *5 (accepting facts from the attached data breach notice over conflicting allegations in the complaint). Thus, Egbert's asserted risk-based damages remain speculative and cannot support a negligence claim. *See Key*, 454 F. Supp. 2d at 690 (granting defendant's motion to dismiss after finding "Plaintiff's claims are based on nothing more than a speculation that she will be a victim of wrongdoing at some unidentified point in the indefinite future"). *See also Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 783 n.4 (9th Cir. 2018) (distinguishing *Galaria* and dismissing as too speculative plaintiff's Fair Credit Report Act claim due to plaintiff's failure to allege his personal information in fact was improperly obtained and misused).

**2. Mitigation efforts**

Egbert further alleges that the time and effort he has spent mitigating the risk of future harm – including changing passwords, verifying the authenticity of the Notice of Data Breach, and monitoring his financial accounts – constitute recoverable damages. (Doc. No. 1-1 at 12). Although

Egbert generally alleges "Plaintiff and at least 13,858 Class members" incurred "out-of-pocket" losses and expenses, the complaint fails to provide facts explaining what these expenses are or how they were incurred. (*Id.* at 5-6). And when directly addressing his injuries, Egbert does not allege that he personally suffered any direct monetary loss as a result of the data breach or his mitigation efforts. (*Id.* at 11-13). Instead, he alleges only that he will "need to expend resources mitigating the future harm." (*Id.* at 13).

Crown argues that the time and effort associated with responding to a data breach are not legally cognizable damages under Ohio negligence law. (Doc. No. 7 at 16). Crown further asserts that the Supreme Court of Ohio has never recognized voluntary mitigation efforts of this nature as recoverable damages. (*Id.*). Crown urges that I should not unilaterally "expand Ohio law" to recognize such damages until the Supreme Court of Ohio says otherwise. (Doc. No. 12 at 10).

Egbert counters he has a duty to mitigate damages, and thus, "it is reasonable to compensate [him] for the past and future time, money, and effort that is necessary to mitigate the risk of harm." (Doc. No. 11 at 15) (citing *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021)) ("[W]hen a plaintiff faces a sufficient risk of harm, the time, money and effort spent mitigating that risk are also concrete injuries.").

Courts have recognized that lost time and mitigation efforts can constitute an injury-in-fact sufficient to establish standing. *See, e.g.*, *Short*, 271 N.E.3d at 373; *Galaria*, 663 F. App'x at 388 ("[A] substantial risk of future harm, coupled with reasonably incurred mitigation costs are sufficient to establish a cognizable Article III injury at the pleading stage of the litigation."). Some courts have also concluded that such allegations are sufficient to survive a motion to dismiss on a negligence claim. *See Mulkey v. Roundpoint Mortg. Servicing Corp.*, 1:21 CV 01058, 2021 WL 5804575, at *4 (N.D. Ohio Dec. 6, 2021) (holding that plaintiff's allegation of "lost time from their need to continually monitor their credit and accounts" were sufficient to plausibly allege negligence).

To be sure, I do not suggest that mitigation efforts and lost time can never constitute legally cognizable damages.[3] On the allegations presented here, however, Egbert has failed to plausibly allege that he is entitled to recover such damages. As laid forth above, Egbert does not plausibly allege his information was actually compromised or that he faces a substantial risk of imminent harm. Under these circumstances, the time Egbert spent reviewing the Notice of the Data Breach, changing passwords, and monitoring his financial accounts – while prudent and generally advisable – does not constitute recoverable damages supporting a negligence claim. *See Mission*, 2024 WL 3877530, at *6 (finding no actual injury where time spent self-monitoring accounts and credit reports were mitigation efforts directed at "trying to combat a speculative, potentially nonexistent threat"). *See also Kahle*, 486 F. Supp. 2d at 712-13 (holding that "without direct evidence that the information was accessed or specific evidence of identity fraud," voluntary mitigation costs did not "amount to damages in a negligence claim"); *Clapper*, 568 U.S. at 416 (explaining that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending").

Based on the allegations in the complaint, Egbert has failed to plausibly allege that his mitigation efforts or lost time constitute recoverable negligence damages.

**3. Privacy-based damages**

Egbert also argues that the alleged data breach caused a "privacy injury" sufficient to support his negligence claim. (Doc. No. 11 at 17). (*See also* Doc. No. 1-1 at 12). Relying principally on *Allen*

---

[3] In his Notice of Supplemental Authority, (Doc. No. 13), Egbert cites a recent, unpublished opinion from the Mercer County, Ohio, Court of Common Pleas, concluding that "allegations of a targeted cyberattack involving the compromise of sensitive personal information, coupled with asserted mitigation efforts and a resulting risk of identity theft, are sufficient to plausibly allege concrete injury for the purposes of standing and to defeat a motion to dismiss." *In re Mercer Health Data Breach Litig.*, No. 25-CIV-037, 2026 WL 1352287, at *5 (Ohio Comm. Pl. May 7, 2026). The decision, however, relies on *Short* and focuses primarily on standing. It contains little analysis on the motion to dismiss. Moreover, as Crown correctly observes in its response, the court applied Ohio's liberal pleading standard rather than the federal plausibility standard. (Doc. No. 14 at 2-3).

and decision from other jurisdictions, Egbert contends that he suffered a compensable injury the moment his Social Security number and other PII were taken. (Doc. No. 11 at 17).

Crown notes that Egbert identifies no Supreme Court of Ohio or Ohio appellate court decision recognizing a privacy-based injury, standing alone, as legally cognizable damages for negligence. (Doc. No. 12 at 13). It argues that *Allen* – and the opinions relying on that case – represent an unwarranted expansion of Ohio negligence law. (*Id.* at 13-14). Crown further notes that Ohio already recognized invasion of privacy as a distinct common-law tort with its own elements. (*Id.* at 13). Crown asserts that recognizing a negligence claim based solely on a privacy injury would effectively recast Egbert's negligence claim into a claim for invasion of privacy, which Egbert has not pled. (*Id.*). Crown urges that I leave any expansion of Ohio negligence law to encompass privacy-based damages to Ohio courts. (*Id.* at 14).

The Ohio Court of Appeals recently addressed privacy-related injuries in *Short*. 271 N.E.3d at 366-67. There – relying in part on *Allen* and *Bohnak* – the court concluded that the alleged attempt by cybercriminals to sell the plaintiff's PII on the dark web constituted a privacy-injury sufficient to establish standing to bring a claim for invasion of privacy. *Id.* That court did not address whether those allegations would state a negligence claim. Accordingly, *Short* does not resolve the issue presented here.

Although the court in *Allen* concluded that the plaintiffs' alleged privacy injury satisfied the damages element of their negligence claim, I respectfully find that analysis unpersuasive. *See Allen*, 696 F. Supp. 3d at 438. As an initial matter, that court acknowledged that "no Supreme Court of Ohio (or, for that matter, Ohio appellate court) decision squarely addresses" whether a privacy injury is cognizable damages in negligence. *Id.* at 437. That said, the *Allen* court made an "*Erie* guess" that the Supreme Court of Ohio would recognize such damages. *Id.* at 437-38.

In reaching that conclusion, that court relied in part on the Seventh Circuit's decision in *Diefenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) and the Second Circuit's holding in *Bohnak*, 79 F.4th at 285. Based on the holdings in those cases, the *Allen* court reasoned that because a privacy injury may constitute an injury in fact sufficient to establish standing, a plaintiff who establishes standing based on a privacy injury "has almost certainly" satisfied the damages element of negligence. *Allen*, 696 F. Supp. 3d at 437-38; *see also Munger*, 2026 WL 1223399, at *6 (N.D. Ohio May 5, 2026) (relying on *Allen* to conclude the same).

For the reasons laid forth above, I respectfully disagree. Standing and substantive law require distinct inquiries that serve different purposes. Satisfying one does not necessarily – or "almost certainly" – satisfy the other. *See Bond*, 564 U.S. at 219 ("[W]hether a plaintiff states a claim for relief goes to the merits in the typical case, not the justiciability of a dispute.") (citation and internal quotation marks omitted); *Chao*, 540 U.S. at 624-25.

Moreover, even if the *Allen* court's "*Erie* guess" is correct, that case is distinguishable. In that case, the court concluded the plaintiff had plausibly alleged that hackers in fact obtained the plaintiff's PII. *See Allen*, 696 F. Supp. 3d at 434-35. *See also Allen v. Wenco Mgmt., LLC*, Case No. 1:23-cv-103 (Doc. No. 1-1 at 5) (alleging "hackers accessed Plaintiff's . . . PII"); (*id.* at 8) (alleging plaintiff was informed "that his personally identifying information was accessed in the breach"). By contrast, I have concluded Egbert has not plausibly alleged that his PII was taken and, therefore, his assertion that he suffered a privacy injury is only speculative.

**4. Diminished value of private information**

Egbert asserts that he has plausibly alleged cognizable damages based on the diminished value of his PII. (Doc. No. 11 at 18). Crown argues that Egbert has failed to allege facts making it plausible that his information is worth less today than it was before the data breach and, therefore,

he has failed to plausibly allege he suffered cognizable damages based on the diminished value of his PII. (Doc. No. 7 at 18, 20).

Egbert responds that the data breach "'impairs [his] ability to participate in the economic marketplace.'" (Doc. No. 11 at 18-19) (quoting *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1191 (D. Nev. 2022)). Egbert further contends that the value of his PII need not be reduced "to terms of dollars and cents in some fictitious marketplace where [plaintiffs] offer such information for sale to the highest bidder.'" (Doc. No. 11 at 18) (quoting *In re Mednax Serv., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1204 (S.D. Fla. 2022)).

District courts within the Sixth Circuit have generally held that absent factual allegations showing that a plaintiff has reaped – or intended to reap – economic value by selling PII, the alleged diminution in value of that information is not a cognizable injury. *See Tate v. EyeMed Vision Care, LLC*, No. 1:21-cv-36, 2023 WL 6383467, at *5 (S.D. Ohio Sept. 29, 2023); *see also Mission*, 2024 WL 3877530, at *7; *Marlin v. Assoc. Materials, LLC*, No. 5:23CV1621, 2024 WL 2319115, at *3 (N.D. Ohio May 22, 2024).

Here, Egbert does not allege that he has ever sold, or intended to sell, his PII. Nor does he plausibly allege facts showing that the value of his PII has actually diminished because of the data breach, in no small part because he has not plausibly alleged his PII in fact was obtained by an unauthorized third party. Instead, the complaint contains only the conclusory allegation that personal information has inherent value, without alleging facts showing that Egbert personally suffered an economic loss resulting from any reduction in that value.

Thus, Egbert has failed to plausibly allege cognizable damages based on the diminished value of his PII.

**5. Anxiety and emotional distress**

Egbert alleges that he has suffered, and will continue to suffer "stress, fear, and anxiety," and "emotional distress" due to the substantial risk of imminent harm and loss of privacy. (Doc. No. 1-1 at 13, 44).

Crown argues that these allegations are conclusory and insufficient to support a negligence claim. (Doc. No. 7 at 21). Specifically, Crown asserts that recovery for emotional distress under Ohio law is generally limited to circumstances in which the plaintiff witnessed or experienced an actual or impending physical damage, the defendant's negligence caused that danger, and the resulting distress was reasonably foreseeable. (*Id.*). Crown further argues that to recover under a theory of emotional distress, the alleged distress must be severe and debilitating. (*Id.* at 22). Crown contends that Egbert's claim fails because he does not allege either physical injury, exposure to impending harm, or severe and debilitating emotional distress. (*Id.*).

Egbert did not respond to Crown's arguments in his opposition brief. (*See* Doc. No. 11). "A plaintiff abandons undefended claims" at the motion to dismiss stage. *PNC Bank, Nat. Ass'n v. Goyette Mech. Co.*, 88 F. Supp. 3d 775, 785 (E.D. Mich. 2015) (citing *Doe v. Bredesen,* 507 F.3d 998, 1007-08 (6th Cir. 2007); *Meredith v. Allen Cty. War Memorial Hosp. Comm'n,* 397 F.2d 33, 34 n. 2 (6th Cir. 1968); and, *Mekani v. Homecomings Fin., LLC,* 752 F.Supp.2d 785, 797 (E.D. Mich. 2010)). Therefore, I grant Crown's motion to dismiss on this basis.

**B. ECONOMIC LOSS DOCTRINE**

Crown argues that even if Egbert plausibly alleged legally cognizable damages, his losses are purely economic and so are barred by Ohio's economic loss doctrine. (Doc. No. 7 at 22).

Egbert responds that the economic loss doctrine does not apply for several reasons. (Doc. No. 11 at 19). First, he argues that he has plausibly alleged intangible injuries. (*Id.*). I have considered and rejected that argument.

Second, Egbert contends that the "special relationship" exception to the economic loss doctrine applies. (*Id.*). Lastly, he argues that Crown owed him an independent common-law duty to safeguard his information. (*Id.* at 20).

Because Egbert has failed to plausibly allege recoverable damages – an essential element of negligence – I need not determine whether the economic loss doctrine independently bars recovery. The negligence claim fails regardless of the doctrine's application.

**C. IMPLIED CONTRACT**

Egbert alleges that an implied contract arose when he provided Crown with his personal information and paid money to receive "medical services." (Doc. No. 1-1 at 45). He contends that Crown breached that implied contract by "failing to take reasonable measures to safeguard" his PII. Crown argues that Egbert has failed to plausibly allege a "meeting of the minds" on all material terms of the alleged implied contract – an essential element of the claim. (Doc. No. 7 at 26).

Under Ohio law, plaintiffs alleging the existence of an implied contract must establish the same elements of an express contract: offer, acceptance, consideration, and a meeting of the minds on all material terms. *See Deffren v. Johnson*, 169 N.E.3d 270, 277 (Ohio Ct. App. 2021) (holding that the party asserting an implied contract carries a "heavy burden" to "demonstrate the existence of each element necessary to the formation of a contract including, inter alia, the exchange of bilateral promises, consideration[,] and mutual assent") (further citation and internal quotation marks omitted). In determining whether the parties have come to a meeting of the minds, a court considers the parties' conduct, their declarations, and the surrounding circumstances. *Rhoads v. Olde Worthington Bus. Ass'n*, 246 N.E.3d 87, 102 (Ohio Ct. App. 2024). Ultimately, the facts must demonstrate that the parties intended to enter into a contractual agreement. *Id.*

Egbert asserts that Crown's implied promises include:

> (1) taking steps to ensure that any agents who are granted access to [PII] also protect the confidentiality of that data; (2) taking steps to ensure that the information that is

> placed in the control of its agents is restricted and limited to achieve an authorized medical purpose; (3) restricting access to qualified and trained agents; (4) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (5) applying or requiring proper encryption; (6) multifactor authentication for access; and (7) other steps to protect against foreseeable data breaches.

(Doc. No. 1-1 at 45-46).

As evidence of these alleged promises, Egbert points to Crown's alleged "Privacy Policy described above." (*Id.* at 46) Other than this single reference, however, the complaint does not refer to any "Privacy Policy." I can only conclude – as Crown suggests – that this reference is a remnant of an earlier draft concerning another case. (Doc. No. 7 at 27). Egbert identifies no other conduct plausibly supporting the conclusion that the parties intended to enter into an agreement containing the extensive security obligations he now identifies.

Moreover, Egbert acknowledges – and I agree – that Crown's collection of his personal information was simply part of its ordinary business operations. (Doc. No. 1-1 at 44). Employers routinely collect employees' PII to administer payroll, benefits, and tax obligations. The complaint does not contain factual allegations plausibly supporting an inference that Crown promised to do anything beyond using Egbert's personal information for purposes related to his employment and employee benefits. *Cf. Walker* v. *JPMorgan Chase Bank, N.A.*, 2026-Ohio-813, 2026 WL 686023, at *4 (Ohio Ct. App. Mar. 11, 2026) (holding that defendant's residual benefit from retaining plaintiff's PII does not establish contract formation, and dismissing implied contract claim because the plaintiff failed to show the defendant agreed to act in exchange for credit application containing PII).

Thus, Egbert has failed to plausibly allege that the parties reached a meeting of the minds regarding the security of his personal information. *Compare Tucker v. Marietta Area Health Care, Inc.,* No. 2:22-cv-184, 2023 WL 423504, at *5 (S.D. Ohio Jan. 26, 2023) (finding no implied contract

where Privacy Policy did not contain a promise on part of defendant to prevent unauthorized access) *with Foster*, 493 F. Supp. 3d at 640-41 (finding implied contract claim survived dismissal where defendant "represented that it would keep [PII] secure").

**D. UNJUST ENRICHMENT**

Egbert next brings a claim under the theory of unjust enrichment, alleging that he conferred a monetary benefit upon Crown by providing his PII. (Doc. No. 1-1 at 47). He argues that Crown financially benefited by failing to expend adequate resources to secure that information and instead retained those funds for its own profit. (*Id.*). Egbert requests that Crown "be compelled to disgorge into a common fund or constructive trust for the benefit of [Egbert] and Class Members proceeds that they unjustly received from them." (*Id.* at 48). Crown counters that Egbert's claim fails because he did not plausibly allege that he conferred a benefit on Crown that would be unjust for Crown to retain. (Doc. No. 7 at 29).

To prevail under a theory of unjust enrichment, plaintiffs must show: "(1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of such benefit[,] and (3) the defendant retained that benefit under circumstances in which it would be unjust for him or her to retain that benefit." *Cleveland Cent. Cath. High Sch. v. Mills*, 125 N.E.3d 328, 340 (Ohio Ct. App. 2018) (citations omitted). The purpose of an unjust enrichment claim "'is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant.'" *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (quoting *Hughes v. Oberholtzer*, 123 N.E.2d 393, 397 (Ohio 1954)).

Nothing alleged in the complaint indicates that Crown "'has and retains money or benefits which in justice and equity belong to another.'" *Johnson*, 834 N.E.2d at 799 (quoting *Hummel v. Hummel*, 14 N.E.2d 923, 927 (Ohio 1938)). Egbert provided his personal information so that Crown could administer employee benefits obligations. As Crown correctly observes, any financial gain it

received resulted from Egbert's employment services – not from the value of his PII. (Doc. No. 12 at 20). And Crown compensated Egbert for those services by paying his agreed wage. *See Tate*, 2023 WL 6383467, at *8 (S.D. Ohio Sept. 29, 2023) ("[A] traditional exchange of payment for goods and services is not a circumstance in which it is "unjust" to allow the defendant to retain the benefit.").

Moreover, Egbert fails to plausibly allege that Crown derived any benefit from the use of his personal information. He does not allege that Crown sold his information or otherwise profited from its disclosure. And as set forth above, Egbert also failed to plausibly allege that his personal information possesses the intrinsic economic value he attributes to it. *See Walker*, 2026 WL 686023, at *4 (finding unjust enrichment claim failed where plaintiff failed to plausibly allege her PII had intrinsic value); *see also Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 782 (S.D. Ohio 2024)) ("Plaintiffs cannot recover the 'value' of their [personal information] because they failed to allege Limestone benefited in that amount, for example by selling or profiting of their [personal information] in any way, or frankly, that Plaintiffs were deprived of the value of their [personal information] when they gave it to Limestone."); *In re Bon Secours Mercy Health Data Breach Litig.*, No. 24-cv-00594, 2025 WL 1827804, at *12 (S.D. Ohio July 2, 2025) (dismissing unjust enrichment claim where plaintiff failed to plausibly allege defendant "commoditized, gained monetary benefit, or otherwise profited from [the plaintiff's] PII.") (citation omitted).

Further, Egbert does not allege that he offered either monetary payments or his PII in exchange for data protection services. Thus, his allegation that Crown was unjustly enriched by retaining money meant for those services fails. *See Brooks*, 732 F. Supp. 3d at 782 (finding unjust enrichment claim failed where plaintiff did not show he paid banking fees in exchange for PII protection).

Because Egbert has failed to plausibly allege that Crown received any benefit from his PII that would be unjust for Crown to retain, I dismiss his claim for unjust enrichment.

### E. DECLARATORY AND INJUNCTIVE RELIEF

Egbert also brings a claim seeking declaratory and injunctive relief. As Crown correctly notes, (Doc. No. 7 at 31), declaratory and injunctive relief are not stand-alone causes of action, but rather equitable remedies. *See Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013). Further, Egbert's request for equitable relief is dependent on the underlying merits of his other claims. Because I have dismissed Egbert's substantive claims, I deny his request for declaratory judgment and injunctive relief. *See Weiner v. Lais & Co.*, 108 F.3d 86, 92 (6th Cir. 1997) ("With regard to Count IV, in which plaintiff seeks declaratory relief, plaintiff has merely asserted a form of relief, not a cause of action. Plaintiff is not entitled to this relief in the absence of a viable claim.") (abrogation on other grounds recognized by *D.S.S. by and through McDowell v. Prudential Ins. Co. of Am.*, No. 21-5313, 2022 WL 95165, at *3 (6th Cir. Jan. 10, 2022)).

### F. REQUEST TO AMEND

Egbert included in a footnote in his opposition brief a request for leave to amend his complaint if I concluded one or more of his claims for relief were not plausibly alleged. (Doc. No. 11 at 12 n.1). While Federal Rule of Civil Procedure 15 "instructs courts to "freely give leave" to amend," a '"request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend."' *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (quoting *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP,* 622 F.3d 471, 486 (6th Cir.2010), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011)) (alteration by *La. Sch. Emps.'*).

I acknowledge that Egbert filed suit first in the Auglaize County Court of Common Pleas before Crown removed the case, and that Ohio's notice pleading standard does not require of a plaintiff as much as the federal pleading standard. (*See* Doc. No. 11 at 12 n.1). But Egbert did not

file a proper motion for leave to amend and offers no insight into what amendments he might make to his 54-page complaint. *See Kuyat*, 747 F.3d at 444 (concluding "[b]oth because the plaintiffs did not present an adequate motion and because they did not attach a copy of their amended complaint, the district court did not abuse its discretion in refusing to allow the plaintiffs to amend their complaint based on" a single sentence in their opposition brief). Therefore, I decline to grant Egbert's request for leave to file an amended complaint.

## IV. Conclusion

For the reasons stated above, I grant Defendant Crown Equipment Corporation's motion to dismiss Plaintiff Roger Egbert's complaint for failure to state a claim upon which relief may be granted. (Doc. No. 7).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge